**In the United States District Court
for the District of Kansas**

———————

Case No. 25-cv-2030-TC-TJJ

———————

KALIECE D. BROWN,

*Plaintiff*

v.

UNIVERSITY OF KANSAS HOSPITAL AUTHORITY,

*Defendant*

———————

## MEMORANDUM AND ORDER

Kaliece D. Brown, proceeding pro se, sued her former employer, the University of Kansas Hospital Authority, alleging race discrimination and retaliation in violation of 42 U.S.C. § 1981 and asserting three claims under Kansas common law. Doc. 72 at ¶ 4.a. UKHA previously moved to dismiss the operative complaint, Doc. 38, and now moves for summary judgment on all claims, Doc. 76. For the following reasons, UKHA's motion for summary judgment is granted as to the Section 1981 claims, the Kansas common law claims are remanded to state court, and UKHA's pending motion to dismiss, Doc. 38, is denied as moot.

**I**

**A**

Two standards, one applicable to motions for summary judgment and the other applicable to cases involving pro se litigants, are relevant for resolving the pending motions. They are discussed in turn.

**1.** Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material"

1

when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency that Rule 56 seeks to promote. *Adler*, 144 F.3d at 672.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(a)–(c). To determine whether a genuine dispute exists, the court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues as to those dispositive matters remain for trial. *Celotex*, 477 U.S. at 324; *Savant Homes*, 809 F.3d at 1137.

**2.** These rules do not operate in a vacuum. When plaintiffs, such as Brown, proceed pro se, a court must construe their pleadings generously. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Id.* But it does not permit a court to construct legal theories on the plaintiff's behalf or assume facts not pleaded. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

**B**

The plaintiff in this case is Kaliece Brown. She formerly worked for the University of Kansas Hospital Authority. This case involves Brown's resignation and surrounding events that she contends give rise

to her claims of race discrimination and retaliation under 42 U.S.C. § 1981, and related claims under Kansas common-law theories. Doc. 72 at ¶ 4.a.[1]

Brown, who is a black woman, worked for UKHA as a Medical Assistant in the Pediatrics Department in Prairie Village, Kansas, from July 2021 until September 2023. Doc. 72 at ¶¶ 2.a.i–ii, 2.a.vi. For most of that time, Kelly McKeegan supervised her. *Id.* at ¶ 2.a.xii. In July 2023, Danielle Juarez became her supervisor, and Mallory Leach managed the department. Doc. 80 at 2; Doc. 77-5 at ¶ 5; Doc. 77-6 at ¶ 4.

Two sources of workplace friction preceded Brown's resignation. The first was Brown's attendance record. UKHA tracked attendance with points where demerits were assessed in half- and whole-point increments for absences and late arrivals, which accrued toward progressive discipline and fell off over time. *See* Doc. 80-1 at 22, 24. Seven active points warranted a final written warning. *Id.* at 24. By September 2023, Brown had accrued six, had received written warnings for tardiness and absences along the way, and acknowledged the accuracy of the incidents underlying them. *Id.* at 24; Doc. 77 at ¶¶ 15–22.

The second source of friction was a scheduling conflict. In August 2023, Brown told Juarez, who set the department's schedules, that she could no longer work Friday mornings because she had enrolled in a nursing program. Doc. 77 at ¶¶ 23–24. Juarez responded that UKHA could not accommodate every Friday morning off until December and offered two alternatives. Brown could transfer to UKHA's Medical Pavilion location, or she could move to PRN status, an as-needed arrangement under which she would work only when the clinic called her in. Brown declined both. *Id.* at ¶¶ 27–31.

On September 11, 2023, Juarez instructed Brown by text message to report to the KU MedWest location in Shawnee, Kansas, for her shift. *See* Doc. 77 at ¶¶ 4, 35. This was a different facility from the Prairie Village clinic where Brown regularly worked. *Id.* Brown responded that she could not travel there because she lacked car insurance, that she had told Juarez as much before, and that she would take

---

[1] All document citations are to the document and page number assigned in the CM/ECF system. All facts are uncontroverted or, to the extent controverted, viewed in the light most favorable to Brown, the nonmoving party. *Snyder v. Beam Techs., Inc.*, 147 F.4th 1246, 1259 n.5 (10th Cir. 2025).

an attendance point for the day instead. Doc. 80-1 at 18; Doc. 77 at ¶ 38. Juarez replied that travel was part of the job and characterized Brown's response as a refusal to do her job. Doc. 80-1 at 18. A follow-on message from Juarez stated: "It is not our fault that you do not have insurance on your car;" Brown responded: "It's Disgusting?? I'm confused," and Juarez replied: "Sorry that was a voice text error." Doc. 80-1 at 19; *see* Doc. 77-5 at ¶¶ 8–9 (Juarez attesting that she dictated the message, that her phone's voice-to-text feature wrote "disgusting" where she said "discuss," and that she corrected it).

That same day, Juarez went to human resources to explore disciplining Brown. She emailed Melissa Reed, an Employee Relations Consultant, and asked whether Brown could be disciplined, either for her attendance record or for the refusal to work. Doc. 80-1 at 23. Reed responded that Brown had called in rather than shown up and refused to work. *Id.* In plain terms, UKHA treats the two situations differently. An employee who calls in before a shift takes an attendance point, no matter her reason. Doc. 80-1 at 23. But only an employee who shows up for work and then refuses an assignment commits insubordination. *Id.* Because Brown called in, Reed explained, her conduct fell on the attendance side of that line. *Id.* After reviewing Brown's attendance ledger, Reed wrote that Brown had only six attendance events—one short of the threshold for a final written warning—and "[w]e may need to change our plan and focus on the conduct of refusal to work at that location." *Id.* at 24. Juarez eventually inquired whether she could simply bypass the verbal-warning step of UKHA's progressive-discipline sequence and issue a written warning for the conduct instead. Ultimately, Reed and Juarez decided to issue a written warning for the refusal to report to KU MedWest. Doc. 77-4 at ¶ 11; Doc. 77-5 at ¶ 12.

A day after her discussion with Juarez, Brown submitted her two-week resignation notice. Doc. 72 at ¶ 2.a.iii. Later that morning, Juarez reported the resignation to Reed, who responded that resignation might be for the best and directed that the text-message screenshots be uploaded to Brown's personnel file so the documentation would be available if Brown ever applied again. Doc. 80-1 at 25. On September 14, Brown withdrew her notice but she resubmitted it about twenty minutes later, declaring that her final day would be September 27, 2023, and asking to leave at noon on that day. Doc. 72 at ¶¶ 2.a.iv–v, 2.b.v. When UKHA asked her if she was sure, Brown responded that her resignation stood, thanked Leach for the opportunity, and said she was sad to leave. *Id.* at ¶ 2.b.vi. The parties have stipulated that Brown

4

"resigned and terminated her employment with UKHA due to a scheduling conflict." *Id.* at ¶ 2.a.viii. Brown also testified that she had decided to resign regardless of what happened on September 27. Doc. 77-2 at 20–21.

On September 27—her last day—Brown arrived late and was scheduled to work until 4:30 p.m. Doc. 77 at ¶¶ 63–64. When she reminded Juarez that she intended to leave at noon, Juarez told her that the department could not accommodate the early departure because the clinic was short-staffed, and Leach, by Brown's account, twice told her that if she left she could not come back. Doc. 77 at ¶¶ 65–66; Doc. 72 at ¶ 3.a.vii. Brown emailed UKHA's AskHR service that morning, writing that she had put in her two weeks' notice with a noon departure, that her supervisor would not accommodate it, and asking how best to proceed. Doc. 72 at ¶ 2.b.xi. Brown testified that she contacted HR because Juarez said the department could not accommodate a departure that she requested when she resigned and Brown was fed up with them. Doc. 77-2 at 19–20. Brown clocked out at 12:09 p.m. and did not return. The department annotated its internal schedule "Left Clinic." Doc. 72 at ¶ 2.a.vii; Doc. 77-6 at ¶¶ 9–10.

Even though she resigned, Brown later tried to get rehired at UKHA, applying for seven different job openings. Doc. 77 at ¶ 79. In December 2023, a member of UKHA's Talent Acquisition team asked Juarez whether she recommended rehiring Brown. Juarez said no, citing Brown's unsatisfactory work performance. Doc. 77-5 at ¶¶ 16–17. UKHA did not hire Brown for any of the seven positions she sought even though her employment file reflected that she was eligible to be rehired. Doc. 77 at ¶¶ 78, 79, 92. Brown does not know either the identities or qualifications of the individuals UKHA hired for any of the seven positions she sought; she claims that these hirings had "nothing to do with" her. *Id.* at ¶¶ 87–89.

There is evidence suggesting that UKHA did not foreclose rehiring Brown. In June 2024, UKHA's Career Center Coordinator, Aimee Hirsch, coached Brown to add detail to her employment profile so that hiring managers could see her full experience and certifications. And UKHA encouraged her to keep applying. Doc. 72 at ¶¶ 2.b.viii–ix.

Based on these facts, Brown sued UKHA in the District Court of Johnson County, Kansas, and UKHA removed the case to federal court. Doc. 1. After discovery closed, the Pretrial Order preserved four claims: race discrimination under Section 1981 (Count I), retaliation

under Section 1981 and Kansas common law (Count II), retaliatory interference with prospective employment under Kansas common law (Count III), and constructive discharge under Kansas common law (Count IV).[2] Doc. 72 at ¶ 4.a. UKHA moved for summary judgment on all claims. Docs. 76 & 77.

## II

UKHA moves for summary judgment on all of Brown's claims. Even viewing facts in the light most favorable to Brown, her federal claims fail and this Memorandum and Order declines to exercise supplemental jurisdiction over her remaining state-law claims. As a result, summary judgment is granted on the Section 1981 claims, and the remaining state-law claims are remanded to the District Court of Johnson County, Kansas.

## A

Brown asserts, in both Counts I and II, that UKHA violated her rights under 42 U.S.C. § 1981. Doc. 72 at ¶¶ 4.a.i, 4.a.iii. Section 1981 guarantees "[a]ll persons . . . the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. Relevant to this dispute, it provides a federal remedy against race discrimination in employment, *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015), and against retaliation for opposition to race-based discrimination, *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017).

Where, as here, a claim of discrimination or retaliation under Section 1981 rests entirely on circumstantial evidence, district courts analyze summary judgment motions by applying the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1215 (10th Cir. 2022). Under that framework the plaintiff must first

---

[2] Brown's Amended Complaint asserted claims under Title VII, Doc. 34, but that claim was not preserved in the Pretrial Order. Doc. 72 at 1. As a result, those claims are no longer part of Brown's lawsuit against UKHA. *See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (holding that claims and theories "not included in the pretrial order are waived").

make a prima facie case. *Ford*, 45 F.4th at 1215. If a prima facie case is shown, the burden "shifts to the employer to offer a legitimate, non-discriminatory reason for its employment decision." *Id*. If the employer offers a legitimate, nondiscriminatory or nonretaliatory explanation, the burden shifts back to the plaintiff to prove that the employer's explanation is pretextual. *Id*.[3]

## 1

UKHA seeks summary judgment on Count I. It contends that Brown cannot establish a prima facie case of race discrimination, that its decisions rested on legitimate and nondiscriminatory reasons, and that Brown cannot show pretext. Doc. 77 at 21–31. UKHA is right. Assuming that the rehire denials were adverse employment actions, there is no evidence that this decision had anything to do with Brown's race. And even if Brown could make a prima facie case, her pretext evidence identifies personal or professional grievances devoid of any evidence that race played any part in UKHA's action. Summary judgment is therefore granted as to Count I.

## a

In Count I, Brown alleges that UKHA discriminated against her because of her race—principally by refusing to rehire her—in violation of Section 1981. Doc. 72 at ¶ 4.a.iii. Under the *McDonnell Douglas* framework for this type of claim, a plaintiff must thus first make a prima facie case of discrimination. This requires that the plaintiff establish that she belongs to a protected class, suffered an adverse employment action, and that the challenged action took place under circumstances giving rise to an inference of discrimination. *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021).

The Tenth Circuit defines adverse employment action liberally, taking a case-by-case approach that examines "the unique factors relevant to the situation at hand." *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010). An adverse employment action is one that leaves the employee worse off with respect to "an identifiable term or

---

[3] Neither party proffers direct evidence of discrimination or retaliation, and both treat the claims under the burden-shifting framework. Doc. 77 at 20–21; *see generally* Doc. 80 at 3–8 (arguing pretext and honesty rather than proposing another framework).

condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). The harm need not be "significant." *Id.* at 355. A refusal to hire is the first item on the statute's own list of prohibited actions. 42 U.S.C. § 2000e-2(a)(1); *see Muldrow*, 601 U.S. at 354–57.

As for circumstances giving rise to an inference of discrimination, "[p]laintiffs can establish evidence of [this] prong [of their prima facie case] in various ways, such as 'actions or remarks made by decisionmakers,' 'preferential treatment given to employees outside the protected class,' or 'more generally, upon the timing or sequence of events leading to plaintiff's termination.'" *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (quoting *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005)). For preferential treatment of an employee outside the protected class to raise an inference of discrimination, the employees need to be similarly situated such that they share a supervisor or decisionmaker, follow the same standards, and engage in comparable conduct. *Ibrahim*, 994 F.3d at 1196; *see also Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 540 (10th Cir. 2014) (applying the same standard at the pretext stage); *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800–01 (10th Cir. 2007).

If a plaintiff establishes a prima facie case, the burden shifts to the employer. At that stage, the employer must establish a "legitimate, non-discriminatory reason" for the adverse employment action. *Ford*, 45 F.4th at 1215. An employer's burden here is "exceedingly light." *Id.* On a motion for summary judgment, the employer need only "articulate a reason for the [action] that is not, on its face, prohibited and that is reasonably specific and clear." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) (quotations and citation omitted). It "need not persuade the court that it was actually motivated by the proffered reasons." *Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1223 (10th Cir. 2003) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981)).

And then, if the employer offers a legitimate, nondiscriminatory reason for the adverse employment action, the burden returns to the plaintiff, who must point to evidence suggesting the employer's explanation is pretextual. *Burdine*, 450 U.S. at 256. Pretext is shown when the employer's proffered reasons are "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief." *Ford*, 45 F.4th at 1216; *see also Mauldin v. Driscoll*, 136 F.4th 984, 997 (10th Cir. 2025).

8

When examining whether an employer's explanation is pretextual, a court must consider the evidence as a whole. *Ford*, 45 F.4th at 1216. A plaintiff is not required to prove pretext by any particular method. *Bird v. W. Valley City*, 832 F.3d 1188, 1203 (10th Cir. 2016). While not exhaustive, evidence of pretext may include the "prior treatment of plaintiff," *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1112 (10th Cir. 2008), the "employer's policy and practice regarding minority employment," *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1193 (10th Cir. 2006), "disturbing procedural irregularities," including evidence that the employer "acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff," *Kincaid v. Unified Sch. Dist. No. 500, Kansas City, Kansas*, 94 F.4th 936, 948 (10th Cir. 2024) (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002), and *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)), and the "use of subjective criteria," *Sanders*, 544 F.3d at 1112. [T]iming and sequence of events leading up to [an employee's] firing are . . . evidence of pretext" but are not "sufficient alone." *Bird*, 832 F.3d at 1204. On summary judgment, all doubts concerning pretext are resolved in the plaintiff's favor, but conjecture and bare allegations are not enough. *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2011).

**b**

UKHA argues that Brown cannot establish a prima facie case for her race discrimination claim. Doc. 77 at 21–27. In doing so, it concedes that Brown belongs to a protected class, but disputes prongs two and three. *Id.* at 22–27.

UKHA argues that Brown did not experience an adverse employment action. Doc. 77 at 23–26. Not so. At least one of the actions Brown challenges—UKHA's decision not to rehire her for any of seven positions, Doc. 77 at ¶ 79—qualifies as an adverse employment action.[4] Unfavorable hiring decisions are a quintessential adverse action. *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237–38 (10th Cir. 2004);

---

[4] Brown also casts as adverse Leach's alleged statements that she could not come back and the "Left Clinic" schedule annotation, as steps in a blacklisting campaign. Doc. 72 at ¶¶ 3.a.vii–viii. Whether either independently qualifies need not be decided; Count I fails at the third element regardless.

*see McDonnell Douglas*, 411 U.S. at 796, 802 (announcing the framework in a refusal-to-rehire case); *Muldrow*, 601 U.S. at 354–57.

UKHA also argues that Brown fails to identify any evidence that gives rise to an inference of discrimination. Doc. 77 at 26–27. Even viewing the facts most favorably to Brown on this prong, UKHA is right. Consider first the remarks Brown alleges decisionmakers made to her. Brown points, for example, to the September 11 text message from Juarez that, as Brown recounts it, said it was "not our fault you don't have insurance and it is disgusting," Doc. 80 at 3–4,[5] and to Leach, who oversaw the pediatrics department, twice telling her that if she left she could not come back. Doc. 80 at 3–4; Doc. 72 at 5, 7–8. Harsh or not, neither of those remarks refers to or implicates race. And Brown identifies no evidence to suggest that any decisionmaker made any race-based comment. Doc. 80-1 at 18–25. That cuts against an inference of discrimination. *See Plotke*, 405 F.3d at 1101.

Brown's arguments about comparators fare no better. *Contra* Doc. 80 at 3–4. For an inference of discrimination, the comparators must be similarly situated such that they share a supervisor or decisionmaker, follow the same standards, and engage in comparable conduct. *Ibrahim*, 994 F.3d at 1196. On the rehiring decisions, Brown identifies no comparator at all, and concedes she does not know whom UKHA hired for the seven positions, their qualifications, or anything else about them. Doc. 77 at ¶¶ 87–90. With nothing in the record about the successful applicants, there is no comparison to draw, and this

---

[5] The screenshot UKHA produced reflects Juarez's corrected wording ("[w]e will discuss more tomorrow"), and Juarez attests that the message as first sent contained "disgusting" only because the voice-to-text function mistranscribed "discuss." Doc. 80-1 at 19; Doc. 77-5 at ¶¶ 8–9. Brown quotes the message as she received it. Doc. 80 at 3–4. The dispute is not material because, either way, the remark does not have anything to do with race. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013) (explaining a fact is material only when it could affect the outcome of the suit under the governing law).

route to an inference of discrimination is simply absent. *See Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002).[6]

On the alleged treatment of Brown at her resignation, Brown's proffer consists of unsworn assertions that some employees "will testify they were not told they could not return after resignation," and a black former employee was unable to return after resigning. Doc. 80 at 4, 13. This assertion fails to sustain her claim. For one thing, these allegations are not supported as Rule 56 requires: There is no affidavit, declaration, or deposition testimony that supports them. Doc. 80 at 13 ¶¶ 66–68. Unsworn statements in a brief are not summary judgment evidence. Fed. R. Civ. P. 56(c)(4); D. Kan. R. 56.1(d); Doc. 78 (providing Brown, who proceeds pro se, with notice of Rule 56's obligations); *see* Doc. 75.

The only document Brown offers is a letter from Breaunna Walls, a former medical assistant in the same pediatrics department. She (allegedly) writes that she resigned more than once, was never told she could not return, and was rehired each time. Doc. 80-1 at 11–12. The letter is unsworn, so it too is not competent evidence. *See* Fed. R. Civ. P. 56(c)(4); 28 U.S.C. § 1746 (giving unsworn statements evidentiary effect only if made under penalty of perjury); D. Kan. R. 56.1(d) ("Any witness statements must be in the form of affidavits."). And even on its own terms, it does not say what race Walls is, who supervised her, when her departures and returns occurred, or the circumstances of her resignations. In other words, the letter omits every fact that would make Walls a comparator. *See Ibrahim*, 994 F.3d at 1196; *Hysten*, 296 F.3d at 1181.

While Brown may satisfy the first two prongs for a prima facie case, she fails on the third. That is fatal to her Count I claim. *Barlow*, 703 F.3d at 505 ("If the plaintiff does not establish a prima facie case, [her] entire case fails.").

**c**

---

[6] This is not to require proof that the positions went to non-black applicants, as a Section 1981 plaintiff need not show her replacement fell outside the protected class. *Perry v. Woodward*, 199 F.3d 1126, 1136–38 (10th Cir. 1999). But a plaintiff who relies on comparative treatment to supply the inference must ground the comparison in evidence. *Hysten*, 296 F.3d at 1181.

Even if Brown did properly establish a prima facie case, Count I still fails. Specifically, UKHA articulates legitimate, nondiscriminatory reasons for the rehire denials, and Brown fails to show that those reasons are pretextual.

Start with the reason for UKHA's employment decisions. UKHA asserts that it declined to hire Brown for the seven positions she sought based on Brown's disciplinary record, inadequate employment applications, and its preference for other applicants over Brown. Doc. 77 at 27–29; Doc. 77-5 at ¶ 17. That suffices. Reliance on an employee's disciplinary record is a commonly accepted legitimate reason. *Kendrick*, 220 F.3d at 1230 (treating insubordination as legitimate). So is preferring one applicant over another. *Luster*, 667 F.3d at 1093–94 (crediting the employer's belief that another candidate was the most qualified); *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (accepting a preference for a better-qualified candidate and a plaintiff's lack of the position's required qualifications).

UKHA's satisfaction of its burden returns the burden to Brown. Brown's response never explicitly discusses pretext as part of Count I, but the Pretrial Order maintains the theory and alleges that UKHA's "stated reasons were pretextual and inconsistent with policy and practice." Doc. 72 at ¶ 4.a.iii. And her filings supply some substance. Brown argues that the "shift in rationale" behind her written warning "supports an inference of pretext." Doc. 80 at 6. The rest of her brief attacks the honesty of UKHA's account. *Id.* at 3–8.[7]

*Kendrick* describes three ways to make that case, namely, show the stated reason is false, show the employer broke its own written policy, or show it treated similarly situated employees differently. 220 F.3d at 1230. Brown's filings pursue the first of those routes.

Brown's falsity evidence comes from UKHA's own September 2023 emails. They show that UKHA initially considered a final written warning for attendance issues but learned Brown was one point short of qualifying for a final written warning, so it shifted to a conduct-based write-up instead. Doc. 80-1 at 22–24. And then, when Brown

---

[7] Attempting to exercise the utmost caution without becoming an advocate for Brown, her filings are construed liberally, and this Memorandum and Order treats all of it as her pretext case. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

officially resigned, Reed took steps to preserve those text-message exchanges for Brown's employment file in case Brown ever tried to reapply for employment with UKHA. *Id.* at 25.

This evidence does not suggest that UKHA's stated reasons are "so incoherent, weak, inconsistent, or contradictory" as to be "unworthy of belief." *Ford*, 45 F.4th at 1216. Instead, these records confirm that UKHA took steps to preclude Brown's reemployment based on her ongoing unsatisfactory performance. Put another way, this record lacks any basis to disbelieve UKHA's stated reasons and instead infer that race might plausibly be behind UKHA's decision. As a result, UKHA is entitled to summary judgment. *See Kendrick*, 220 F.3d at 1231–32 (affirming summary judgment on a Section 1981 discharge claim where the employee's denial of the underlying misconduct and his subjective belief of a management conspiracy gave a jury no basis to find the employer's insubordination-based explanation pretextual); *see also Painter v. Midwest Health, Inc.*, No. 19-2336, 2021 WL 4439432, at *22 (D. Kan. Sept. 28, 2021) (granting summary judgment on Section 1981 discrimination claims where a nursing-facility employee gave the jury no basis to find the employer's discipline-based explanation pretextual).

Brown's remaining theories fail because they do not plausibly discredit UKHA's record. For example, she attempts to controvert UKHA's records by suggesting they are not accurate and/or that UKHA failed to properly investigate her concerns by interviewing her about the incidents. But Brown fails to cite any evidence and, instead, relies only on her subjective belief. Doc. 80 at 3–4 (recounting an HR-collusion theory and asserting Reed failed to investigate); *id.* at ¶¶ 54–59 (asserting Reed closed her complaints without interviewing her). That will not do. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (holding unsubstantiated allegations carry no probative weight at summary judgment and evidence must rest on more than speculation, conjecture, or surmise). Yet even if these concerns were properly supported, nothing suggests that they were in any way related to Brown's race. That, however, is the evidence she needs. *Johnson*, 594 F.3d at 1213 (holding an incident with no meaningful connection, in time or topic, to the plaintiff's protected class or the challenged decision cannot support an inference of pretext). And, as already noted, she has no evidence that her comparators were treated better or differently. *Supra* Part II.A.1.b. Finally, there is no evidence that Juarez's negative recommendation reflected racial animus. Instead, the

evidence simply shows Juarez's own view of Brown's failure to meet her expectations. That fails to support pretext. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 420–22 (2011) (recognizing cat's-paw liability only where a supervisor's act is motivated by discriminatory animus and proximately causes the adverse action); *EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 486–88 (10th Cir. 2006) (requiring proof that the subordinate's animus, rather than the decisionmaker's independent judgment, produced the decision).

### 2

UKHA also seeks summary judgment on Count II. That motion is granted because Brown lacks evidence that she engaged in protected opposition to race discrimination.

### a

Count II alleges that UKHA retaliated against Brown for opposing race discrimination, in violation of Section 1981. Doc. 72 at ¶ 4.a.i. Section 1981 prohibits retaliation against those who oppose racial discrimination. *Parker Excavating*, 863 F.3d at 1220; *see CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 445 (2008). Where, as here, the plaintiff relies on indirect evidence, the claim proceeds under the same *McDonnell Douglas* framework that governs Count I. *Ford*, 45 F.4th at 1224 (noting framework "applies the same way in discrimination and retaliation cases"); *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (same). A prima facie case of retaliation requires the plaintiff to establish that she engaged in protected opposition to racial discrimination, that a reasonable person would have found the challenged action materially adverse, and that a causal connection existed between the opposition and the adverse action. *Parker Excavating*, 863 F.3d at 1220; *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1172 (10th Cir. 2018).

Protected opposition under Section 1981 means opposition to race-based discrimination. *Parker Excavating*, 863 F.3d at 1220. Protected opposition can range from filing formal charges to communicating informal complaints to superiors. *Iweha v. State of Kan.*, 121 F.4th 1208, 1233 (10th Cir. 2024). No magic words are required, but the employee "must convey to the employer his or her concern that the employer has engaged in a practice made unlawful" by the statute. "[G]eneral complaints about company management and one's own negative performance evaluation will not suffice." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). Filing a charge of

discrimination is also protected activity. *See* 42 U.S.C. § 2000e-3(a); *Twigg*, 659 F.3d at 998.

The materially adverse element sweeps more broadly than its discrimination counterpart. It reaches any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," whether or not the action changes the terms of employment. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). But, it does not reach "petty slights or minor annoyances." *Id.*

As for causation, the adverse action must come "subsequent to or contemporaneous with" the protected activity, and the closer it follows, the more readily a causal connection may be inferred. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). The plaintiff's ultimate burden is but-for causation, meaning she must show the adverse action would not have occurred absent her protected opposition. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

If the plaintiff makes her prima facie case, the remaining steps mirror Count I. That is, the employer bears the exceedingly light burden of articulating a legitimate, nonretaliatory reason for its action, and the burden then returns to the plaintiff to show that reason is pretextual, under the standards set out above. *Supra* Part II.A.1.a; *see Ford*, 45 F.4th at 1224.

**b**

UKHA argues that Brown cannot establish a prima facie case.[8] Doc. 77 at 31–33. In particular, it asserts she engaged in no protected conduct and, in any event, there is no causation.

Consider the protected opposition prong first. Brown's filings identify three acts in support of her claim, but none involved opposition to race discrimination or conveyed any concern about race. These

---

[8] For Count II, UKHA's summary judgment papers argue only that Brown fails at the prima facie stage. Doc. 77 at 31–33. As a result, this Memorandum and Order confines its analysis to that point and does not consider other, potentially dispositive arguments. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (per curiam) ("Because courts are 'essentially passive instruments of government,' we rely on the parties to 'frame the issues for decision' and decide 'only the questions presented.'") (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020)).

include "[r]aising safety concerns regarding travel without insurance," "[o]pposing hostile and inappropriate supervisory conduct," and "[c]ontacting Human Resources to protect her employment record." Doc. 72 at ¶ 4.a.i.[9] For example, her September 27 email to AskHR complained that Juarez would not honor the noon departure she had requested in her notice, and it asked how to proceed. Doc. 72 at ¶ 2.b.xi; *see also* Doc. 77-2 at 19–20. But a complaint about scheduling, staffing, or perceived rudeness does not constitute opposition to racial discrimination and cannot anchor a Section 1981 retaliation claim. *See Parker Excavating*, 863 F.3d at 1220. Instead, the employee "must convey to the employer his or her concern that the employer has engaged in a practice made unlawful" by the statute; "[g]eneral complaints about company management" will not suffice. *Hinds*, 523 F.3d at 1202–03 (rejecting claimed opposition where the employee's emails did not "mention or even allude to" the protected characteristic); *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (explaining an employer cannot retaliate for opposition it never knew about); *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 890–91 (10th Cir. 2018) (affirming that a report conveying no discrimination concern is not protected activity); *see also Tracy v. Vail Resorts, Inc.*, No. 21-4145, 2022 WL 16557393, at *4 (10th Cir. Nov. 1, 2022) (noting reports of workplace-safety concerns are likewise unprotected); *Kincaid v. Unified Sch. Dist. No. 500*, 645 F. Supp. 3d 1134, 1153–56 (D. Kan. 2022) (noting complaints to human resources untethered to a protected characteristic are not protected).

The internal events Brown emphasizes, such as the re-labeled discipline, the retained screenshots, and the negative recommendation, do not change that conclusion. At most they suggest a response to her resignation and her complaints. Even assuming each was materially adverse, *see Burlington N.*, 548 U.S. at 68, Section 1981 forbids retaliation only for opposing race discrimination. *CBOCS West*, 553 U.S. at 445; *Parker Excavating*, 863 F.3d at 1220. A resignation is not opposition to

---

[9] Brown's response brief offers two additional candidates, including her accommodation requests and her repeated complaints to human resources. Doc. 80 at 4. Neither is preserved in the Pretrial Order, which supersedes the pleadings and controls the issues for trial, so neither is considered. Fed. R. Civ. P. 16(d); *Wilson*, 303 F.3d at 1215; Doc. 72 at 1. Even if they were considered, neither conveyed any concern about race, so neither would be protected opposition. *Hinds*, 523 F.3d at 1203.

anything, and complaints that never mention race oppose only the workplace grievances they describe. *Hinds*, 523 F.3d at 1203.

Nor can Brown satisfy the causation prong. The only protected activity in this record occurred after the alleged adverse employment actions. Brown's January 23, 2025, charge of discrimination is itself protected activity. 42 U.S.C. § 2000e-3(a); *Twigg*, 659 F.3d at 998. But neither the Pretrial Order nor Brown's opposition claims that UKHA retaliated against Brown for filing the charge, Doc. 72 at ¶ 4.a.i; Doc. 80 at 4, and no such claim could succeed because Brown submitted no application after filing it, Doc. 77 at ¶¶ 100–01, and every act she challenges preceded it. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (requiring that the adverse action come "subsequent to or contemporaneous with" the protected activity); *cf. Nassar*, 570 U.S. at 360.

**B**

Only Counts I and II arise under federal law, and those claims have been resolved, leaving only the state-law claims. This implicates supplemental jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(3), a "district court[] may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." When deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh, in each case and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity. *See generally Gold v. Local 7 United Food & Com. Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998), overruled on other grounds by *Styskal v. Weld Cnty. Bd. of Cnty. Comm'rs*, 365 F.3d 855, 858 (10th Cir. 2004). A federal court may, and usually should, decline to exercise supplemental jurisdiction over any remaining state claims. *I Dig Tex., LLC v. Creager*, 98 F.4th 998, 1012 (10th Cir. 2024); see also *Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1102–03 (10th Cir. 2020) (affirming refusal to retain "copious state law issues" notwithstanding years of litigation, completed discovery, and a filed pretrial order). This preference acknowledges that "notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)) (alteration omitted).

Those values support declining jurisdiction here. The remaining claims are creatures of Kansas common law, and their merits are "best left for a state court's determination." *Brooks*, 614 F.3d at 1230.

Fairness, which is the concern for "justice between the parties," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), points the same way. Remand works no injustice to either side. UKHA may reassert its summary-judgment arguments in state court on the record already made, and remand, unlike dismissal, spares the parties the added "expense and the time involved in enforcing state law." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988). Nor is there forum manipulation to weigh against remand. *See id.* at 357 (instructing courts to take a plaintiff's "manipulative tactics" into account in striking the remand balance). Brown did not engineer her way out of federal court; she never chose it. She filed in Kansas state court, arrived here only because UKHA removed the case, and unsuccessfully sought remand at the outset. Docs. 6 & 15. Judicial economy does not compel a different result. Although discovery is complete and the motion fully briefed, the Tenth Circuit has affirmed declining jurisdiction on records far more developed than this one, *Foxfield Villa Assocs.*, 967 F.3d at 1102–03.

Because this case was removed from state court and Brown unsuccessfully tried to get it remanded earlier in this case, the appropriate course is remand rather than dismissal. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 637, 639–40 (2009). Remand here simply returns a 2024 Johnson County case to the court where Brown filed it.

Accordingly, this Order declines to exercise supplemental jurisdiction over Brown's Kansas common-law claims, and remands those claims to the District Court of Johnson County, Kansas.[10] UKHA's motion for summary judgment is denied as moot insofar as it is directed at the Kansas common-law claims, without prejudice to reassertion of those arguments in state court.

### III

For the foregoing reasons, UKHA's Motion for Summary Judgment, Doc. 76, is GRANTED as to Brown's claims under 42 U.S.C. § 1981 and otherwise DENIED AS MOOT. UKHA's Motion to Dismiss, Doc. 38, is DENIED AS MOOT. The state-law claims are

---

[10] Brown purports to assert a claim of retaliation in Count II that arises not only under Section 1981, but also under Kansas common law. Doc. 72 at ¶ 4.a.i. To the extent that claim has been pled, it is treated just as Counts III and IV.

18

REMANDED to the District Court of Johnson County, Kansas. The clerk is directed to mail a certified copy of this Memorandum and Order to the clerk of the District Court of Johnson County, Kansas, and to enter judgment in favor of UKHA on the Section 1981 claims. The trial setting and all remaining deadlines in this federal action are VACATED.

It is so ordered.

Date: July 29, 2026        _s/ Toby Crouse_

Toby Crouse
United States District Judge